WILLIE LEE HUNTER                                                     PLAINTIFF

VS.                                    CIVIL ACTION NO. 1:09cv195-HSO-JMR

MELTON HARRIS, KEN BROADUS,
SEAU KIMMERLY, CHAD POWELL,
ALBERT JAMES, MIKE BYRD, and
JOHN DOES                                                            DEFENDANTS

---

## REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [23-1] for Partial Summary Judgement filed on behalf of Defendants Melton Harris, Ken Broadus, Shawn Kimmerly[1], Chad Powell, and Mike Byrd (collectively hereinafter "Served Defendants") on November 16, 2009, a Motion [40-1] for Summary Judgment filed on behalf of Served Defendants on March 22, 2010, and a Motion [46-1] for Summary Judgment filed on behalf of Plaintiff Willie Lee Hunter on May 20, 2010. Both of Served Defendants' summary judgment motions are accompanied by Memorandums [24-1, 41-1] in Support thereof. Plaintiff filed a Response [29-1] in Opposition to Served Defendants' Motion for Partial Summary Judgment, however, instead of filing a Response in Opposition to Served Defendants' Motion [40-1] for Summary Judgment, Plaintiff filed his Motion [46-1] for Summary Judgment. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Served Defendants' Motion [23-1] for Partial Summary Judgment and Motion [40-1] for Summary Judgment be granted and Plaintiff's Motion [46-1] for Summary Judgment be denied and all claims

---

[1]The Court notes that Defendant Shawn Kimmerly was incorrectly designated as Sheau Kimmerly in Plaintiff's Complaint.

against Defendants be dismissed with prejudice.

## STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action against Supervisor Melton Harris[2], Director Ken Broadus, Deputy Shawn Kimmerly, Deputy Chad Powell, Sheriff Mike Byrd, and Deputy Albert James (collectively hereinafter "Defendants") alleging that he suffered violations of his constitutional rights while being detained as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC").

## FACTS:

Plaintiff, Willie Hunter, was arrested by the Jackson County Sheriff's Department on March 13, 2008, and charged with Possession of Cocaine. (Ex. "A" Attach. Defs.' [40-2] Mot. Summ. J. 2.) Plaintiff was also charged with violating the terms of his probation from a previous conviction. *Id.* Plaintiff was booked into the Jackson County Adult Detention Center ("JCADC") to await trial on his pending charge and resolution of his alleged probation violation. On or about October 21, 2008, Plaintiff was transferred into the custody of the Mississippi Department of Corrections. (*See* Defs.' Mem. [24-1].) Plaintiff filed his original Complaint on March 5, 2009 against the Defendants, and he filed an Amended Complaint on March 19, 2009. Plaintiff alleges that he suffered violations of his civil rights while being held as a pretrial detainee in the JCADC.

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement, denied adequate medical treatment, subjected to physical abuse by JCADC deputies

---

[2]The Court notes that Melton Harris' title of Supervisor is for his position as a member of the Board of Supervisors for Jackson County, Mississippi, not any supervisory role at the JCADC. (Pl.'s Compl. [1-1] 6.) Also, Plaintiff never alleges that Defendant Harris was at the JCADC or personally involved with any of the alleged constitutional violations. Therefore, Plaintiff's claims against Defendant Harris are only in his official capacity as a Supervisor of Jackson County. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990) (Doctrine of *respondeat superior* is inapplicable in § 1983 cases.).

during his detention at the JCADC, deprived of personal property, conspired against, and subjected to retaliation. Specifically, Plaintiff alleges that the jail is overcrowded, that his mattress was removed during the day while he was in lockdown thus forcing him to sleep on the floor, and that he was served bag lunches. Also, Plaintiff alleges that excessive force was used during shakedowns that occurred on May 28 and May 29, 2008. Plaintiff claims he was beaten by correctional officers and then bitten by a canine, and he claims a JCADC deputy prevented him from receiving medical treatment for the bite. Also, Plaintiff alleges that his property was searched and personal documents were destroyed during the shakedowns. Plaintiff also alleges conspiracy pursuant to 42 U.S.C. § 1985 and § 1986, and he further allegs that certain defendants failed to properly train or supervise the JCADC officers. In addition to his federal claims, Plaintiff also alleges numerous state law claims including battery, assault, civil conspiracy, outrage, breach of fiduciary duty, intentional infliction of emotional distress, negligent hiring, and slander.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the

opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional

rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at

580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## <u>ANALYSIS:</u>

In their Memorandum [41-1] in Support of their Motion for Summary Judgment, Served Defendants assert that Plaintiff has failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, Served Defendants contend that Plaintiff's official capacity claims are, in reality, claims against Jackson County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Served Defendants also assert that Plaintiff's individual capacity claims are subject to a qualified immunity defense because not only has Plaintiff failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Served Defendant's conduct was objectively reasonable and they were acting within the scope of their discretionary authority at all relevant times.

Plaintiff's complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the

Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him from pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a prisoner to invoke 'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted). The Supreme Court's finding was further summed up in a footnote: "Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001). The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

The Court notes that Plaintiff's inmate file does not contain one inmate grievance form concerning any of the above allegations. (*See* Ex. "A" Attach. [40-2] Defs.' Mot. Summ. J.) The Court further notes that Plaintiff's file contains only two (2) inmate grievance forms submitted by Plaintiff pertaining to the arrogant and disrespectful attitude of an officer Carter and Plaintiff's bland diet. *Id.* at 5, 7. Therefore, upon a thorough review of the record and the pleadings before the Court, the Court finds that Plaintiff has failed to avail himself of the available administrative remedies provided by the JCADC. Accordingly, this Court finds that Plaintiff's instant 42 U.S.C. § 1983 claims should be dismissed for Plaintiff's failure to meet the PLRA's administrative remedies

exhaustion requirement.

Although Plaintiff' failure to exhaust available administrative remedies is dispositive as to his section 1983 claims, the Court will, out of an abundance of caution, proceed to review Plaintiff's substantive claims against Served Defendants in both their official and individual capacities.

The Court notes that as an alleged probation violator, Plaintiff occupied the position of a pretrial detainee during his incarceration at the JCADC. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[3] or

---

[3] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-

"episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton*, 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I. Conditions of Confinement:

---

23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated as a pretrial detainee within the JCADC, and that Defendants Sheriff Byrd, Supervisor Harris, and Director Broadus are officially liable because they failed to remedy the situation. Plaintiff's official capacity claims against Defendants Sheriff Byrd, Supervisor Harris, and Director Broadus are, in reality, claims against the offices which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants Byrd, Harris, and Broadus in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff's allegations include that he was subjected to an overcrowded jail, forced to sleep on the floor because his mattress was taken away during the day, and served bag lunches. However, other than the above mentioned allegations of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Jackson County. Accordingly, Defendants Byrd, Harris and Broadus are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the JCADC.

The Court notes that Plaintiff has raised claims against Defendants Sheriff Byrd and Director

Broadus in their individual capacities. However, because Defendants Sheriff Byrd and Director Broadus are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendants Sheriff Byrd and Director Broadus, Plaintiff must offer proof that the conditions at the JCADC were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegation concerning the quality of the food served at the JCADC fails to state a constitutional claim. Plaintiff's only complaint is that he was served bag lunches while he was placed in lockdown. However, Plaintiff has offered no evidence or even made an allegation that the food at the JCADC was served in the alleged manner as a form of punishment. Plaintiff makes no allegation that the bag lunches were insufficient or not nutritious; he offers nothing more than the claim of being served bag lunches. Furthermore, the evidence indicates that the food is prepared by Aramark Correctional Services, LLC, who specializes in preparing meals for inmates. (*See* Ex. "F" Attach. Defs.' Mot. [40-8] Summ. J.) Although the food is not to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Id*. This issue do not rise to an actionable claim.

Plaintiff further alleges that the JCADC is overcrowded. At the outset, the Court notes that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment. *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 WL 53269, *2 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 WL 3334091, *5 (N.D.Miss. 2008). Plaintiff makes no direct allegation that any defendant intentionally operated the JCADC in an overcrowded condition. While Defendants Harris, Byrd, and Broadus concede that the JCADC is operated at times above preferred capacity, they argue that a new building has been constructed to house inmates and that a completely new jail has been designed in order to remedy this problem. (*See* Ex. "C" Attach. Defs.' Mot. [40-6] Summ. J.) Also, temporary jail facilities are being constructed to hold additional inmates. *Id.* The Court finds that Plaintiff has failed to establish that the overcrowding at the JCADC is not reasonably related to a legitimate governmental interest such as balancing an overwhelming number of detainees with a finite amount of available housing.

Lastly, Plaintiff contends that while in lockdown he had to sleep on the floor during the day because mats were taken away from the inmates. Defendant Broadus admits that mattresses were taken away from inmates that were housed in Zone B-E during the day, but asserts that this was done because inmates were destroying the mattresses and clogging the drains. (*See* Ex. "F" Attach. Defs.' Mot. [40-8] Summ. J.) Defendant Broadus also notes that the mattresses were returned to the inmates at night when they were more likely to use them to sleep. *Id.* The Court notes that Plaintiff has made no allegation or offered any evidence that any defendant confiscated his mattress during the day as a form of punishment and not for the legitimate governmental objective of reducing the destruction of JCADC property. The Court finds that Plaintiff's specific allegation does not rise to the level of a constitutional violation, as pretrial detainees do not have a constitutional right to an

elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir. 1986).  Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

After a review of the evidence, the Court finds that Defendants Sheriff Byrd and Director Broadus  are entitled to qualified immunity because Plaintiff has failed to create a genuine issue as to whether the conditions of his confinement were imposed as a form of punishment.  Furthermore, Plaintiff has failed to allege an express intent on the part of Defendant Byrd or Broadus to subject him to the allegedly unconstitutional conditions as a measure of punishment.

Assuming, arguendo, that Plaintiff's allegations are sufficient to create an issue as to whether he suffered a violation of his constitutional rights, the Court finds that Defendants Byrd and Broadus are still entitled to qualified immunity because their conduct was objectively reasonable.  *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).    Furthermore, the Court finds that Plaintiff's allegations do not indicate any objectively unreasonable conduct on behalf of Defendant Byrd or Broadus, as Plaintiff has  failed to present any evidence that Defendant Byrd or Broadus were capable of operating the facility in a different manner.    Accordingly, the Court finds that Plaintiff's conditions of confinement claims against Defendants Sheriff Byrd and Director Broadus do not rise to actionable claims and must be dismissed.

The Court also notes that Plaintiff was transferred into MDOC custody on or about October 21, 2008 and he is no longer housed at the JCADC.  Further, Plaintiff's current address on file with this Court, S.M.C.I. Leakesville, MS, supports the fact that Plaintiff is not currently housed at the JCADC.  Accordingly, to the extent that Plaintiff seeks injunctive relief or specific performance regarding his complaints about the conditions of his confinement, his claims are moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County, Tex*., 929 F.2d 1078, 1084 (5th Cir. 1991).

**II. Episodic Acts and Omissions:**

In addition to the allegations concerning the conditions of the JCADC, Plaintiff also alleges that Served Defendants are liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

A.  Denial of Adequate Medical Treatment:

In his Complaint, Plaintiff alleges that he did not receive proper medical care while incarcerated at the JCADC.  As previously stated, Plaintiff's official capacity claim against Defendant Broadus is, in reality, a claim against the office in which he occupied at the time of the alleged incident and, ultimately, Jackson County.  Therefore, to the extent Plaintiff brings this action against Defendant Broadus in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury.  *See Lawson*, 286 F.3d at 263.

Plaintiff claims that on June 3, 2008, he was wearing an arm brace and it was taken away from him by Defendant Broadus. (Pl.'s Am. [6-1] Compl. 8.)  Plaintiff claims he still needed his arm brace and that not having it caused him pain. *Id.*  However, Plaintiff's medical file does not contain any mention of an arm brace or an injured arm, nor is there any sick call request or grievance concerning Plaintiff's arm or a brace. (*See* Ex. "D" Attach. [42-1] Defs.' Mot. Summ. J.)  Plaintiff's medical file reveals that his only sick call request concerned a bland diet and it was responded to. *Id.* at 9.  Regardless, other than the above mentioned allegation of inadequate medical care, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights.  The Court finds that such a bare allegation, without more, is simply insufficient to support

a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against Defendant Broadus.

To the extent, Plaintiff's Complaint also seeks liability against Defendant Broadus in his individual capacity, Defendant Broadus has pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.

2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Broadus contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Broadus was deliberately indifferent to his serious medical needs. Plaintiff's only claim is that Defendant Broadus took away his arm brace while he still needed it, which caused Plaintiff pain. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Broadus was deliberately indifferent to his serious medical needs. Defendant Broadus has submitted an affidavit wherein he states that one week following the shakedowns he noticed Plaintiff still wearing an arm brace which contained a metal component. (Ex. "F" Attach. Defs.' Mot. [40-8] Summ. J. 2.) Defendant Broadus noted that he viewed this metal component as a security threat and thus asked the JCADC nurse if Plaintiff still needed the arm brace. *Id.* Defendant Broadus states that he was informed by the nurse that Plaintiff no longer needed the arm brace. *Id.* Defendant Broadus claims he then removed the arm brace so that the metal component would no longer pose a security threat. *Id.* at 2-3. The Court notes that Plaintiff has not submitted a single piece evidence indicating that not having an arm brace posed a serious risk to Plaintiff's health, nor has he alleged such. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Broadus was aware of a serious risk to Plaintiff's health.

Furthermore, the evidence of record indicates that Plaintiff's lone sick call request concerning a bland diet was responded to by the JCADC medical staff. (*See* Ex. "D" Attach. [42-1] Defs.' Mot. Summ. J.) The Court notes that Plaintiff's medical file does not contain any grievance concerning his arm or an arm brace. At best, Plaintiff's claim amounts to a disagreement with his medical treatment, however, disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). This issue does

not rise to an actionable claim.

B.  Excessive Force:

Plaintiff's Complaint also makes allegations regarding incidents of violence involving employees of the JCADC.  Specifically, Plaintiff alleges that on May 28 and May 29, 2008 he was "tased, dog bitten, beat, kicked, stomped and dragged" by JCADC deputies. (Pl.'s Am. [6-1] Compl. 3.)  Plaintiff claims that he was subjected to the excessive force in retaliation for a lawsuit against Jackson County that he had previously filed.  Plaintiff asserts that Served Defendants are liable in both their individual and official capacities for these alleged incidents.

Served Defendants note that a shakedown took place on May 28, 2008, in response to a fight between inmates that had occurred on the previous night. (Ex. "F" Attach. Defs.' Mot. [40-8] Summ. J. 4.)  Defendant Director Broadus' report of the incident notes that on the morning of May 27, 2008, he was approached by several deputies and informed that NE day room was getting "hot," meaning that inmates were planning on taking a hostage and doing as they please. *Id.*  Defendant Broadus claimed that inmates in NE day room, where Plaintiff was housed, were refusing to "rackdown" and were staying up late and running around the day room at night, which was not allowed.  Inmates were sending notes to JCADC staff advising them about fights and gang activities in the day room that were not being reported.  He also notes that several razors displayed as weapons had been confiscated the previous week.  On the night of May 27, 2008, inmates covered the day room surveillance camera with a sheet and several inmates beat one inmate in a gang related fight.  After this incident a tactical search was planned for the following evening.

Defendant Broadus states that on May 28, 2008 several deputies entered the day room, escorted the inmates out, and conducted a search.  Defendants claim approximately twenty (20) razor blades, four (4) shanks, and two (2) clubs were found, as well as, several bottles of "hooch," tattoo

needles, ink, and gang related publications. Defendant Broadus claims that on the following morning, May 29, 2008, the inmates, upset about the previous nights' shakedown, were belligerent, loud, disorderly, and were refusing to follow instructions. Five inmates, including Plaintiff, were specifically identified by officers as causing the most trouble by refusing to follow directions and inciting the other inmates. The decision was made to remove the five (5) inmates, including Plaintiff, in order to defuse the situation. Approximately twenty-five (25) deputies with four (4) canines were called in to assist in handling the seventy-two (72) inmates. Defendant Broadus claims that approximately twenty (20) inmates refused to comply with officers' orders to lie on the floor and that several had to be physically placed in a prone position. Defendant Broadus states that the five (5) inmates were located and escorted to BE Zone for disciplinary segregation, and he also claims that two (2) of the inmates, including Plaintiff, resisted and were combative with the officers which resulted in minor injuries while they were being escorted. The Court notes that Plaintiff has not submitted any evidence to contradict Served Defendants' accounting of the events of May 28 and May 29, 2009.

Plaintiff's official capacity claim against Served Defendants is, in reality, a claim against the offices which they occupied at the time of the alleged incidents and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Served Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegation of incidents of allegedly unconstitutional conduct, Plaintiff

presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Plaintiff has presented no evidence that Defendants Sheriff Byrd, Supervisor Harris, or Director Broadus were involved in the alleged abuses against him or were even aware they had occurred. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claims.

To the extent that Plaintiff seeks to hold Served Defendants liable in their individual capacities, they assert that they are entitled to the defense of qualified immunity. Also, Defendants Sheriff Byrd and Supervisor Harris note that there is no evidence that they were present during any alleged abuse, let alone that either of them took part in said abuse. Defendant Broadus also notes that Plaintiff only alleges that Defendant Kimmerly and other officers were present when he was abused; Plaintiff does not identify who tased him, kicked him, stomped on him, or drug him to the canine that allegedly bit him. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), in cases similar to the case *sub judice*, where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id*. at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's complaint does not contain any factual allegations sufficient to plausibly suggest Served Defendants themselves violated a constitutional

right of the Plaintiff.  Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Served Defendants to liability in their individual capacities.

However, out of an abundance of caution, the Court will analyze all Served Defendants' claim of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established  constitutional right.  *Siegert*, 500 U.S. at 231.  Plaintiff has not identified any individual that witnessed these alleged assaults, he has not presented a statement from any witness, and he identifies no specific individuals who perpetuated these alleged assaults.  Plaintiff only identifies Defendant Kimmerly as an officer that yelled at him and Defendant James as the officer who rode in the ambulance to the hospital with him. (Pl.'s Am. [6-1] Compl. 5-6.)  While Plaintiff alleges he was kicked, beaten, stomped on, tased and bitten by a canine, Plaintiff does not present any evidence that he was tased or bitten.  Plaintiff's medical records show that he was treated at the Singing River Hospital on May 29, 2008 for bruises. (*See* Ex. "D-2" Attach. [42-1] Defs.' Mot.)  Plaintiff was instructed to apply ice packs; he was not prescribed any medication. *Id.*  The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for violations of duties of care arising under tort law.  Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer).  Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229.

Plaintiff contends that he was singled out on May 29, 2008 for previously filing a lawsuit

against Jackson County. (*See* Pl.'s Am. [6-1] Compl.)  Plaintiff claims that he was kicked to the ground and dragged to a dog where he was bitten on the ankle. *Id.* at 5-6.  Plaintiff asserts he was then tased and dragged to lockdown where he was beaten, stomped, and kicked by officers. *Id.* at 6. Plaintiff claims that he screamed in pain until the nurse was called and he was taken to the hospital. *Id.*  On the way to the hospital, Plaintiff alleges that Defendant James told him that "if he say [sic] anything to the ambulance or hospital personnel about what happen [sic], it would be worse when he was released..." *Id.*  When the hospital staff asked Plaintiff where he was hurting, he claims he "indicated all over but mostly his ribs and shoulder." *Id.*  Plaintiff claims that he was diagnosed with bruised ribs and a re-aggravated broken bone, and he asserts that he was given an arm brace and prescribed pain medicine. *Id.* at 6-7.  However, the medical records from Singing River Hospital show that Plaintiff was diagnosed with contusions, or bruises, and he was instructed to apply ice packs; Plaintiff was not prescribed any medication. (*See* Ex. "D-2" Attach. [42-1] Defs.' Mot. Summ. J.)  Further, there is no mention of a taser or canine bite in the medical records. *Id.*  Plaintiff has not submitted any evidence, by affidavit or otherwise, in support of his allegations.

As noted previously, Defendants have submitted an affidavit and a report of the incident that states Plaintiff was inciting other inmates and was combative with officers which caused them to use force in restraining him.  Defendant Broadus notes that Plaintiff was sent to the hospital because officers believed he was having a panic attack, and he denies that Plaintiff was ever bitten by a canine. (*See* Ex. "F" Attach. [40-8] Defs.' Mot. Summ. J.)  The medical records show that Plaintiff was treated for bruises and instructed to apply ice packs; he was not prescribed any medication. (*See* Ex. "D-2" Attach. [42-1] Defs.' Mot. Summ. J.)  Furthermore, Plaintiff never filed a sick call, medical request or grievance concerning the incident on May 29, 2008, other than asking for a Motrin for pain on the same day. (*See* Ex. "D" Attach. [42-1] Defs.' Mot. Summ. J.)  The evidence

of record demonstrates that Plaintiff obtained nothing more than bruises while resisting officers and being combative with officers that were attempting to place him in disciplinary segregation for inciting inmates and refusing to following instructions. Therefore, Plaintiff has not established that he suffered an injury that was more than *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 9-10, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (Bruises suffered by an inmate cause by alleged excessive use of force and from which the plaintiff recovered within three days did not constitute a physical injury cognizable under the PLRA).

Furthermore, assuming Plaintiff's injury was more than *de minimis*, Plaintiff must still present evidence that the use of force was clearly excessive and the excessiveness was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Plaintiff has not presented any evidence to contradict Served Defendants' accounting of the events of May 28 and May 29, 2008. Plaintiff merely claims that the defendants are committing perjury. (*See* Pl.'s Mot. [46-1] Summ. J.) Plaintiff alleges that he was subjected to excessive force because of a lawsuit he had previously filed against Jackson County, however, he presents no evidence in support of this allegation. The only evidence of record shows that the inmates of NE day room were becoming violent, and that Plaintiff was inciting the inmates and refusing to follow the officers' instructions. While officers were attempting to remove Plaintiff from NE day room and place him in disciplinary segregation, Plaintiff became combative with the officers, resisted them, and refused to follow their orders. Officers, therefore, had to physically remove Plaintiff from the day room and place him in segregation which resulted in bruises to Plaintiff's person. There is no evidence any officer used clearly unreasonable excessive force in removing Plaintiff from NE day room and placing him in segregation. Thus, the Court is left to conclude that Plaintiff has failed to create a genuine issue as

to whether he suffered a violation of his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Served Defendants. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that Served Defendants' conduct was objectively unreasonable in response to the alleged abuse recounted in Plaintiff's Complaint.

The Court notes that Plaintiff has presented no evidence that Served Defendants were involved in this alleged abuse or that Defendants Sheriff Byrd or Supervisor Harris were even aware that it had occurred. Plaintiff does not specifically identify who allegedly tased him, kicked him, beat him or drug him to a canine to be bitten. It appears that Plaintiff seeks to establish Defendants Sheriff Byrd and Supervisor Harris' liability based on the conduct of their unidentified employees. However, the doctrine of *respondeat superior* is inapplicable in Section 1983 cases. *Williams*, 909 F.2d at 123. Therefore, because Plaintiff is unable to present any evidence of Served Defendants' personal involvement in the alleged abuse, any evidence of Defendants Sheriff Byrd or Supervisor Harris' knowledge of the conduct of their employees, or any other unreasonable conduct on behalf of Served Defendants, the Court finds that Served Defendants are entitled to qualified immunity against Plaintiff's individual capacity claims.

C. Retaliation:

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231

(5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.) cert. denied, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997). Mere conclusory allegations of retaliation will not suffice to withstand a proper motion for dismissal of the claim. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (citation omitted). The Fifth Circuit has cautioned district courts to "carefully scrutinize" claims of retaliation in order "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them..." *Id.*

Plaintiff alleges that on May 28, 2008 Defendant Powell approached him and asked if he had ever filed a lawsuit against Jackson County. (Pl.'s Am. [6-1] Compl. 4.) Plaintiff states that he responded in the affirmative and claims that Defendant Powell stated "we gonna make you wish you never did that." *Id.* Plaintiff claims that night a shakedown occurred and his personal property was searched and destroyed. *Id.* at 4-5. Also, Plaintiff alleges that the following night he was singled out by Defendant Kimmerly during a shakedown and then beaten by several officers. *Id.* at 4-6.

It is settled that prison officials cannot act against a prisoner for availing himself of the courts and attempting to defend his constitutional rights. *Hale v. Townley*, 19 F.3d 1068, 1072-73 (5th Cir. 1994). However, Plaintiff has offered no evidence, other than his allegation that he was the victim of retaliation. Plaintiff has not submitted a single affidavit in support of his allegation, nor has he identified any witnesses that might have overheard Defendant Powell's statements. The defendants have submitted affidavits and other evidence that show the reason for the shakedowns was because inmate fighting was occurring in Plaintiff's zone and several inmates were becoming aggressive and violent and threatening to take over the zone. Also, the evidence demonstrates that Plaintiff, along

with four other inmates, were placed in disciplinary segregation because they were refusing to follow instructions and were inciting other inmates to cause problems. Plaintiff and another inmate were injured as a result of them resisting and becoming combative with the officers attempting to place them in segregation. Plaintiff has not submitted any evidence to contradict defendants' evidence. Furthermore, Plaintiff has not submitted any evidence that shows but for the retaliatory motive, the shakedowns would not have occurred and Plaintiff would not have received bruises. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Plaintiff has failed to respond to the Served Defendants' evidence and indicate a material issue that is unresolved. In light of the record, the Court finds that Served Defendants are entitled to summary judgment on this issue.

D. Plaintiff's Failure to Train and/or Supervise Claim and Negligent Hiring and Retention Claim:

Plaintiff's Amended Complaint asserts that Defendants Sheriff Byrd, Supervisor Harris and Director Broadus are liable under section 1983 by and through their employment with Jackson County to oversee the JCADC. The Court notes that Plaintiff's official capacity claims are, in reality, claims against the offices which each occupied at the time of the alleged incidents and, ultimately, Jackson County. To the extent Plaintiff brings this action against Defendants Byrd, Harris and Broadus in their official capacities, he must establish a constitutional violation, and in addition must satisfy the requirements necessary to impose municipal liability.

"Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dept*., 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Instead. counties and supervisors are liable for the constitutional violations committed by county employees only when those violations result directly from a municipal custom or policy. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). A municipality's failure to properly train or

supervise its employees can be a policy or custom giving rise to § 1983 liability. *See City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Therefore, Plaintiff must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.*" Spiller v. City of Tex. City, Police Dept.,* 103 F.3d 162, 167 (5th Cir. 1997).

Plaintiff alleges that Defendants Sheriff Byrd, Supervisor Harris and Director Broadus "failed to provide adequate and competent training and/or supervision to the defendant officers working on the date in question." (Pl.'s Am. [6-1] Compl. 13.) However, Plaintiff must offer proof that the alleged constitutional violation occurred because Defendants Sheriff Byrd, Supervisor Harris and Director Broadus failed to train or supervise their employees, and that the inadequate training was the result of an official custom or policy of the JCADC. Plaintiff has not specifically alleged that there existed a custom of JCADC employees abusing inmates or that there was a policy to inadequately train employees. Plaintiff simply makes a broad allegation that numerous complaints and grievances have been made concerning abuse by JCADC deputies and overcrowding. (Pl.'s Am. [6-1] Compl. 14.) However, Plaintiff does not provide any specific facts in support of this allegation, nor does he provide any evidence that any defendant failed to train or supervise any deputy or that the alleged inadequate training was the result of an official policy or custom.

In response, Defendants Sheriff Byrd, Supervisor Harris and Director Broadus argue that the JCADC deputies were sufficiently trained and therefore there was no deliberate indifference by the county to the rights of persons with whom they would have come into contact. First, the Defendants

argue that both named and served JCADC deputy defendants, Powell and Kimmerly, are certified correctional officers that have been highly trained in their jobs as officers at the JCADC. (Defs.' Mem. [41-1] 12-13.) They note that Defendant Kimmerly successfully completed the course of instruction in Adult Detention Officer Certification, and received instruction in the use of firearms and the application of deadly force. (*See* Exs. "B-1," "B-2" Attach. Defs.' Mot. [40-3] Summ. J.) Defendant Kimmerly also received a professional certificate from the Mississippi Board on Jail Officer Standards and Training as being qualified to be a Mississippi Adult Detention Officer. (*See* Ex. "B-4" Attach. Defs.' Mot. [40-3] Summ. J.) Defendant Powell received instruction in the use of firearms and the application of deadly force, and successfully completed the course on instruction in the use and application of Less Than Lethal Specialty Impact Munitions (*See* Exs. "B-9," "B-11" Attach. Defs.' Mot. [40-4, 40-5] Summ. J.) Defendant Powell was also trained by the Jackson County Sheriff's Department in the use of OC spray, surviving edged weapons, proper use of a taser, and less than lethal specialty impact munitions. (*See* Exs. "B-8," "B-10" Attach. Defs.' Mot. [40-4, 40-5] Summ. J.) Additionally, both Defendants Powell and Kimmerly attended an eight hour training class on Standard Operating Procedures of the JCADC. (*See* Ex. "B-3" Attach. Defs. Mot. [40-3] Summ. J.) Defendants Sheriff Byrd, Supervisor Harris and Director Broadus assert that Defendants Powell and Kimmerly had been properly trained to work in a correctional facility and therefore there was no deliberate indifference on the part of Jackson County. The Court notes that Plaintiff did not respond to Served Defendants claim that the JCADC deputies were properly trained.

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *Id*. While there is evidence that

Plaintiff received bruises from JCADC personnel while he was involved in an altercation with them, Plaintiff makes no specific allegations as to how the training and supervision program at the JCADC was inadequate or defective.

Plaintiff fails to present any evidence to contradict the Served Defendants' assertions that the training and supervision of JCADC deputies was adequate. Instead, Plaintiff asserts that numerous complaints and grievances have been made concerning the overcrowding and abusive officers at the JCADC. However, this Court finds that this lone unsubstantiated allegation is insufficient to support a claim of inadequate training or supervision.

In addition to proving that Defendants Sheriff Byrd, Supervisor Harris and Director Broadus inadequately trained and supervised the JCADC employees, Plaintiff is required to prove that the inadequate training resulted directly from a municipal custom or policy. *See Conner*, 209 F.3d at 796. However, Plaintiff makes no direct allegation of an official JCADC policy that caused the allegedly inadequate training and supervision of the facility's employees. Also, Plaintiff presents no evidence of an official JCADC policy that caused the allegedly inadequate training and supervision of the facility's employees. The Court finds that Plaintiff's bare assertions, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.

Based on the evidence of record, the Court finds that Plaintiff has failed to prove the existence of a genuine issue as to whether there existed an official policy or custom of inadequately training or supervising the employees of the JCADC.

Assuming, *arguendo*, that Plaintiff could prove the existence of an official policy that resulted in inadequate training or supervision, the Court finds that Defendants Sheriff Byrd, Supervisor Harris and Director Broadus would still be entitled to summary judgment as to Plaintiff's

official capacity claims because he cannot prove that their alleged failure to adequately train or supervise amounted to deliberate indifference. "Deliberate indifference . . . [requires] proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel McCully*, 406 F.3d at 381. To establish deliberate indifference, a plaintiff must prove that a defendant acted with more than negligence or even gross negligence. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, a plaintiff must ordinarily demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff has not proffered any evidence to establish that Defendant Sheriff Byrd, Supervisor Harris or Director Broadus were aware that the training and supervision of the JCADC employees was inadequate and likely to result in constitutional violations. Plaintiff has offered no evidence of civil rights violations that occurred prior to May 28, 2008. The Court finds that, absent some evidence of a pattern of prior violations, Plaintiff has failed to prove that Defendant Byrd, Harris or Broadus were aware that he faced a substantial risk of harm.

Based on the foregoing analysis, the Court finds that Plaintiff's Amended Complaint fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violations. Furthermore, this Court finds that Plaintiff's allegations do not indicate that he faced a substantial risk of serious harm to which a defendant responded with deliberate indifference. Thus, there exists no basis for Plaintiff's claims against Defendant Byrd, Harris or Broadus in their official capacities.

Plaintiff's Complaint additionally asserts claims against Defendants Sheriff Byrd and Director Broadus in their individual capacities. However, because they are law enforcement

officials, they are entitled to the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

The Court finds that Plaintiff has failed to create a genuine issue as to whether any defendant acted unreasonably. To impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. In particular, there must be specific allegations as to how a particular training program is defective. *Id.* Plaintiff does not set forth specific allegations as to how Defendant Sheriff Byrd or Director Broadus were unreasonable in their training and supervising methods. In fact, Plaintiff's only specific allegation against Defendants Byrd and Broadus is that they "failed to provide adequate and competent training..." (Pl.'s Am. [6-1] Compl. 13.) However, Defendants Byrd and Broadus have rebutted this allegation by providing evidence that the JCADC has a written use of force policy by which all Officers must abide. (*See* Ex. "C" Attach. Defs.' Mot. [40-6] Summ. J.) Also, Defendants Byrd and Broadus have provided the written policies and procedures that JCADC officers must follow when they search inmate cells and are in situations when use of force is necessary. *Id.* Plaintiff has neither disputed these policies and procedures nor indicated how they are defective or inadequate.

Furthermore, Plaintiff has failed to offer any probative evidence that Defendant Byrd or Broadus failed to reasonably train and supervise the employees of the JCADC. In the case at hand,

the Court finds that Plaintiff has failed to establish any unreasonable conduct on behalf of Defendant Byrd or Broadus. Thus, Defendants Sheriff Byrd and Director Broadus are entitled to qualified immunity as to Plaintiff's individual capacity claims.

Lastly, in order for Plaintiff to make out a state law case of negligent hiring or retention[4], Plaintiff must establish that (1) a JCADC officer had a propensity for violating the constitutional rights of persons; (2) that the county knew or should have known of that propensity; and (3) that the county, in disregard for the rights of those persons with whom those JCADC officers could reasonably be expected to come into contact, hired and retained the JCADC officer with callous disregard for the rights of such person. *See Jones v. Toy*, 476 So.2d 30, 31 (Miss. 1985); *Raiola v. Chevron U.S.A., Inc.*, 872 So.2d 79, 86 (Miss.Ct.App. 2004). Plaintiff has failed to show that any defendant officer did not act as a reasonable competent law enforcement agent during his interactions with Plaintiff. Therefore, Plaintiff cannot prove that Defendant Byrd or Broadus were negligent in hiring or retaining any officer. The Court finds that Plaintiff has simply not offered any evidence to overcome summary judgment. In fact, Plaintiff does not even address these claims in his response to the defendants' motion for summary judgment. As previously noted, "mere allegations or denials" are insufficient to adequately oppose a motion for summary judgment. Fed. R. Civ. P. 56(e). Instead, a party facing a summary judgment motion must "go beyond the pleadings and by... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S at 324. Plaintiff has wholly failed to do so as to any of these claims. Accordingly, Defendants Byrd and Broadus are entitled to summary judgment on this issue.

---

[4]The Court notes Plaintiff's allegation of negligent hiring and/or retention must be a state law claim as there is no cause of action for negligence under 42 U.S.C. § 1983.

E.  Threats and Harassment:

Plaintiff has asserted throughout his Amended Complaint that he was subjected to ridicule, threats and harassment by JCADC officers during his detention at the JCADC.  Plaintiff claims he was laughed at, mocked, and threatened by various male and female officers.  With the exception of the shakedown that occurred on May 29, 2008, which was discussed and analyzed in detail *supra*, there is no suggestion that any of these alleged threats were carried out.  The law is clear that mere threats and verbal abuse alone do not rise to the level of a constitutional violation.  *McFadden v. Lucas*, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S. Ct. 499, 78 L. Ed. 2d 691 (1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.").  Therefore, the Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

F.  Plaintiff's Deprivation of Property Claim:

Plaintiff alleges that during the shakedown on May 28, 2008, JCADC personnel searched his personal property without him present and destroyed sentimental memorabilia. (*See* Pl.'s Am. [6-1] Compl. 3.)  Plaintiff claims that inmates' property was searched and stacked together in a pile without care which resulted in the destruction of some of Plaintiff's property, including his diary, awards, and certificates. *Id.* at 3-5.

In *Hudson v. Palmer*, the Supreme Court determined that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the *Due Process Clause of the Fourteenth Amendment* if a meaningful post-deprivation remedy for the loss is available." 104 S. Ct. 3194, 3204 (1984).  This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis v. Rayless*, 70

F.3d 367, 375 (5th Cir. 1995) (citing *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S. Ct. 975, 985-86, 108 L. Ed. 2d 100 (1990)).

The State of Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property. *See*, *e.g.*, *Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss. 1981) (conversion); MISS. CODE ANN. § 11-38-1 *et seq.* (claim and delivery); MISS. CODE ANN. § 11-37-101 *et seq.* (replevin). It is Plaintiff's burden to establish that these post-deprivation remedies are not adequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94-95 (5th Cir. 1996) (citations omitted). Plaintiff has failed to allege, much less provide any evidence, that these remedies are not adequate. Moreover, the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994) (stating that plaintiff could have brought a suit for conversion against defendant in state court). Numerous Fifth Circuit cases have upheld dismissal of prisoners' suits for property deprivation because of the availability of state law remedies. *See*, *e.g.*, *Myers*, 97 F.3d at 94-95; *Murphy v. J.A. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 763-64 (5th Cir. 1984). Also, the Mississippi Department of Corrections Administrative Remedies Program provides an additional means of obtaining redress for property deprivations. *See Hudson*, 468 U.S. at 536 n.15 (inmate grievance procedures put in place by the prison may constitute an adequate post-deprivation remedy). Accordingly, the Court concludes that this claim should be dismissed.

## IV.  Plaintiff's Section 1985 Claim:

Plaintiff alleges that Defendants Sheriff Byrd, Director Broadus, and Deputy James conceived and executed a plan "to teach [Plaintiff] a lesson" by physically abusing Plaintiff for filing a lawsuit against Jackson County and cover up the truth, resulting in Plaintiff's injuries. (Pl.'s Am. [6-1] Compl. 11.) Plaintiff does not identify which part of § 1985 is implicated by his allegation, but

the only possible relevant portion is the first part of § 1985(3). This provision addresses conspiracies to deprive a person of equal protection under the law and equal immunities under the law. *See Kush v. Rutledge*, 460 U.S. 719, 724-25, 103 S. Ct. 1483, 75 L. Ed. 2d 413 (1983). However, any such conspiracy must be motivated by a racial-based or other class-based invidious discriminatory animus in order to be actionable under § 1985(3). *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (citing *Deubert v. Gulf Fed. Savings Bank*, 820 F.2d 754, 757 (5th Cir. 1987)). Plaintiff does not make an allegation that the conspiracy was based on a racial or other class-based animus, nor is there any evidence of such an animus. Plaintiff does not address Served Defendants' argument for dismissal of this claim. Since Served Defendants have shown there is no question of material fact for the jury in regard to Plaintiff's § 1985 claim, they are entitled to judgment as a matter of law.

## V. Plaintiff's Section 1986 Claim:

Plaintiff alleges that Defendants Supervisor Harris and Sheriff Byrd failed, either intentionally or negligently, to expose, prevent or otherwise thwart the conspiracy to deprive him of his federally protected rights. (Pl.'s Am. [6-1] Compl. 12.) A viable cause of action under § 1986 is dependent upon a viable § 1985(3) claim. *Hamilton v. Chaffin*, 506 F.2d 904, 914 (5th Cir. 1975). As Plaintiff has failed to establish a viable § 1985(3) claim, Defendants Supervisor Harris and Sheriff Byrd are entitled to judgment as a matter of law on Plaintiff's § 1986 claim.

## VI. Plaintiff's State Law Claims:

It is undisputed that Plaintiff was a detainee at the JCADC when the alleged incidents occurred. Served Defendants argue that the Mississippi Tort Claims Act prohibits any state law claim by a detainee against a governmental entity and its employees acting within the course and scope of their employment. *See Harrison v. Greene County Sheriff Dep't*, 899 So.2d 922 (Miss. App.

2005); MISS. CODE ANN. § 11-46-9(1)(m). Plaintiff does not make any argument in opposition.

The Court finds that Plaintiffs' claims under state law are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq.* Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, defendants are entitled to judgment as a matter of law in regard to Plaintiff's state law claims of battery, assault, civil conspiracy, outrage, breach of fiduciary duty, and intentional infliction of emotional distress as a result of these alleged events being barred by the above provision.

## VII. Plaintiff's State Law Slander Claim:

The Court notes that, as previously discussed, MISS. CODE ANN. § 11-46-9(1)(m) bars claims brought by inmates arising under Mississippi law. However, the Act provides an exception from immunity for claims of fraud, malice, libel, slander, defamation or a criminal offense. *See* MISS. CODE ANN. § 11-46-7(2). Therefore, Plaintiff's state law claim of slander is not barred by the Act.[5]

Plaintiff alleges that Defendant James and other officers made slanderous and defamatory statements to medical personnel by not reporting the tasing and canine bite to those who transported Plaintiff to the hospital. (Pl.'s Am. [6-1] Compl. 19.) Also, Plaintiff claims the defendants should

---

[5]The Court notes that it is well established that there is no constitutional right to be free from defamation or slander. *See Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). Thus, libel and slander are not cognizable under section 1983, because a defamation claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States. *See Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980); *see also Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001). Therefore, such must be brought as a state claim.

have informed his family of the incident. *Id.* In order to prove defamation under Mississippi law, Plaintiff has to prove (1) a false statement that has the capacity to injure the plaintiff's reputation; (2) an unprivileged publication, i.e., communication to a third party; (3) negligence or greater fault on part of publisher; and (4) "either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Mayweather v. Isle of Capri Casino, Inc.*, 996 So.2d 136, 139 (Miss.Ct.App. 2008) (citing *Speed v. Scott*, 787 So.2d 626, 631 (Miss. 2001). "[S]landerous words, no matter how grossly defamatory or insulting they may be,... are actionable only upon proof of 'special' damages - special in the sense that it must be supported by specific proof." *Speed*, 787 So.2d at 632 (P25) (citation omitted). Slander is the spoken form of defamation. *Id.* Further, "[s]pecial harm... is the loss of something having economic or pecuniary value." *Id.*

This Court fails to see how Plaintiff was in any way defamed by any JCADC officer's alleged failure to report the full extent of Plaintiff's alleged injuries. Plaintiff claims Defendant James failed to inform medical personnel about Plaintiff being tased or bitten by a canine. He claims Defendant James only informed medical personnel that Plaintiff "was 'Ruff-up [sic] a lit [sic] bit.'" (Pl.'s Am. [6-1] Compl. 6.) However, there is no evidence before this Court that this is a false statement or that there was any damage to Plaintiff's reputation. Plaintiff did not lose any employment. He was not re-arrested or incarcerated. He was already incarcerated for another matter. There has been no evidence that Plaintiff suffered any injury to his reputation nor any injury at all that might amount to a constitutional deprivation. Plaintiff has not shown any loss of economic or pecuniary value. Therefore, because Plaintiff has failed to establish any proof of a false statement, injury to his reputation or special harm, he cannot prove the necessary elements of defamation. *Mayweather*, 996 So.2d at 140.

Furthermore, Plaintiff admits that upon arrival at the hospital he was asked by medical

personnel where he was hurt and Plaintiff indicated all over. (Pl.'s Am. [6-1] Compl. 6.) Plaintiff had an opportunity to inform medical personnel at the hospital of any injury that he may have suffered. Plaintiff claims that Defendant James told him that "if he say [sic] anything to the [medical] personnel about what happen [sic], it would be worse when he was released." *Id.* However, allegations of threats and harassment do not state colorable civil rights claims. Threats, harassment and verbal abuse are not actionable under § 1983. *See e.g.*, *Bender v. Brumley*, 1 F.3d 271, 274 N.4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.); *United States v. Bigham*, 812 F.2d 943, 949 (5th Cir. 1987) (holding that technical batteries, angry words or passing thumps to not rise to the level of constitutional abuses); *Boettner v. Raimer*, 122 Fed. Appx. 711, 2004 WL 2853054, *1 (5th Cir. 2004) (citing *McFadden*, 713 F.2d at 146) ("[T]hreats made against inmates by prison officials do not amount to constitutional violations."). Plaintiff has failed to state a claim of slander.

Furthermore, the Court notes that Plaintiff has not offered any proof, nor has he argued, that any JCADC officers' "statements" fall into one of the five categories that do not require a showing of special harm and are, thus, actionable per se. *Speed*, 787 So.2d at 632. Therefore, Plaintiff has not established a claim of slander per se.

## VIII. Remaining Named Defendant:

Upon dismissal of Plaintiff's claims against Served Defendants, the only remaining named defendant in this action will be Defendant Albert James. Defendant James has never been served with process or a copy of Plaintiff's complaint. (*See* Returned [12-1] Summons.) Summons was first issued for Defendant James on March 27, 2009. (*See* Summons [9-1].) However, service of process on Defendant James was unsuccessful, as the Jackson County Sheriff's Department noted that it has never employed anyone by that name. (*See* Returned [12-1] Summons.) Plaintiff has never sought

any assistance from this Court in locating Defendant James or in identifying the correct defendant. Furthermore, the record shows that, to date, Defendant James has never been properly served with process nor has he entered an appearance.

This Court finds that Defendant James has never been properly served with process or a copy of Plaintiff's complaint. However, the Court finds that any further attempts to serve Defendant James would be frivolous, as discussed *supra*, Plaintiff's Amended Complaint does not allege any viable claims against Defendant James or any of the Served Defendants. The Fifth Circuit has explained that where a defending party established that a plaintiff has no cause of action, this defense generally inures also to the benefit of a non-answering defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citing *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th cir. 1967)). In an unpublished opinion, the Fifth Circuit found no error in granting summary judgment to unserved defendants given that the plaintiff had received adequate notice of the issue dispositive of his claim and responded thereto. *See Elliott v. Morgan*, 111 Fed. Appx. 345 (5th Cir. 2004) (unpublished).[6] In the present case, Served Defendants filed motions for summary judgment on all of the claims Plaintiff raised in his Amended Complaint, including claims Plaintiff raised against Defendant James, and Plaintiff responded thereto. As such, based on the analysis contained herein, any official or individual capacity claim against Defendant James should be dismissed with prejudice.

## RECOMMENDATION:

After considering the evidence of record, and based on the foregoing analysis, the Court concludes that Plaintiff has failed to create a genuine issue as to whether any defendant violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC.

---

[6]Although unpublished opinion is not binding precedent, it is persuasive authority. *Ramchandani v. Gonzales*, 434 F.3d 337, 339 (5th Cir. 2005).

Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed for a punitive purpose. Further, Plaintiff's allegation that he was denied adequate medical care does not rise to the level of a constitutional violation. Also, Plaintiff's allegations that JCADC deputies were inadequately trained/supervised, that he was subjected to abuse at the hands of JCADC employees, that he was conspired against and retaliated against are conclusory and unsupported by any probative evidence. Furthermore, Plaintiff has failed to establish any state law claim against any defendant. Lastly, the remaining unserved defendant, Defendant James, is also entitled to judgment as a matter of law as to Plaintiff's federal and state claims. Accordingly, the Court recommends that Defendants are entitled to summary judgment, and Plaintiff's official and individual capacity claims should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED**, this the ___5th___ day of August, 2010.

_____
s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE